Mr. Pennington, you get only a brief respite here. The court will next call case 23-1968, United States v. Reynolds, and we'll begin with oral argument. Mr. Pennington, again from you. Thank you. Chad Pennington on behalf of Mr. Reynolds. We're asking that this court reverse the district court's finding that there was no alternatives here to supervision revocation. The statute at issue here is 3583G, which poses four specific types of mandatory supervision revocation. Those relate either broadly to firearm possession or they relate to substance abuse possession or substance abuse use, and the statute says that revocation is mandatory and in a term of incarceration is mandatory. It's two parts that are mandatory here. There is a statutory carve-out, however, to those requirements, and that's under 3583D, and that is that the court shall consider alternatives to, whether it be programming or specifically alternatives to supervision revocation. Mr. Pennington, focusing you in on the end of the transcript of the hearing before Judge Lichte contemplating treatment as an option, but based upon the entire history that he's laid out, he doesn't choose to do so here. I would say not in this record, Your Honor, no. I think when we look at whether the court understood itself to have the discretion to revoke or not to revoke, to the extent the district court opines on that, it's very limited. He says that revocation is mandatory, and I have already done that. So when he's looking at treatment options, Your Honor, he's looking at that solely in the sentencing context. This does require that the court shift its analysis more to a specific point in time here, and that is the actual moment of the revocation or the moment that the judge says, I have no other option here, and I've already done that. There's two lines of thought here, and I think the parties have proffered two different lines of cases. There's the Pierce lines of cases, and there's, I guess you'd say, the Metcalf lines of cases. And in Pierce, I think that the holding there is a reviewing court has to be convinced that the lower court understood it had the discretion to decide whether or not to revoke under 3583D. And I don't think this court can be convinced that the district court understood itself to have that discretion. When it's analyzing treatment as a sentencing option, that's not strong indicia that it was aware of its own discretion in the first sentence earlier in the hearing as to whether to revoke or not. Mr. Pennington, on this record, assuming we agree with you that the district court did not think that it had the ability not to revoke, does it matter? Because in the end, he was asked to consider putting the petition under advisement, right, and then giving the defendant a chance to go through rehab again. And the district court considered that, and for the reasons articulated, the district court said, I don't think so. I don't think that's appropriate here. So to the extent that there was any error, wasn't that error harmless? Because that's what the district court considered that. Your Honor, I don't think the error was harmless because in the first sentence, the district court is saying, revocation is mandatory. I've already done that. And then when you get to the sentencing phase, the district court says there's only, effectively the district court opines that there's only so much that can be done, and in this case, the only option is incarceration. Well, so not really though, right, because on page 20, let's see, on page 27, end of the sentence, you know, instead of warehousing him for a couple of years, can you give him a chance, right, for treatment? And so the court there said, well, how would you propose to structure that? Meaning, the way I read it is the district court thought, well, revocation is mandatory, but if I were to go along with your idea, like how would you go about doing that procedurally? And defense counsel says, well, what I would suggest is you take the motion, you hold the motion under advisement. That is, you don't rule on it, because if you rule on it, then you have to revoke the defendant. So don't rule on it, and instead, you know, continue it basically for 60 days, give him a chance to do rehab. And district court kind of later thinks about that and says, no, I don't think so. I don't think rehab is really appropriate here. So I think the argument that you're making, that the district court, you know, didn't even consider any other alternatives, seems to be undercut by that colloquy that he had with Mr. Vandercort. Your Honor, I would say that on review, the question is whether this court is convinced that the district court was aware of its discretion under 3583D. The district court does engage the colloquy. There's the option presented by trial counsel about treatment, possibly staying revocation. At that point, the district court doesn't, trial counsel also asks, I don't know how this could be done, and the trial court doesn't indicate that it can be done. That's one suggestion, the district court was not aware of its discretion. But in addition to the colloquy, later at the time that the sentence is pronounced, the district court is saying, in this particular case, there are no other options other than a period of custody, given the conduct. So I think that if the court here applies the standard from Pierce, the question is whether you're convinced that the district court was aware of its discretion, and I don't think that the government can make the case that the district court was so aware. There was the presentment of the option, and when the judge denies the request for alternative programming, the district court effectively says, there's no other option here. Why couldn't we conclude, though, that you're right, that there's no indication the district court is aware, okay? The district court doesn't, you know, it's not talked about in the statutory terms that we're now talking about, the relationship between D and G and all that. Okay, so no, the district court is not aware, there's not one indication of that. But, as Judge Lee is suggesting, the totality of the transcript made clear that any error in not being aware is harmless. It just has no effect because the district court grounded its reasoning, the revocation sentence of what, 21 months or whatever it was, grounded that in Mr. Reynolds' just ongoing struggles with drug addiction, he just checked himself out of a clinic, you know, it wasn't going well. The trend line was terrible. And so, the judge said, you've kind of given me no choice here, and ultimately, you're not amenable to supervision, didn't impose another term of supervised release. So in other words, why isn't it just harmless? It's just that the judge in substance concluded that another lap through a clinic is just futile. Your Honor, I would say that Mr. Reynolds did suffer a concrete harm here. He was sentenced to a period of custody, 21 months, as you said. And so, whether there's harmless error or not, I don't think we can reach that determination that it's harmless because when the question is presented of an alternative to revocation or programming, the court says it can't do that. So I don't think we can say that the district court, its error was harmless. Mr. Reynolds, to the extent he presented an option for programming as opposed to custody, the court said no, and then he ended up going and serving 21 months where he's still in custody today. So I don't think that the harmless error analysis would save the government's argument. He did suffer a harm here, and it was based on the district court's determination that revocation was mandatory, and there was no other disposition options other than a period of custody. I guess the harmlessness would come in. So, you know, on page 35 of the transcript, the district court talks about the prior rehabilitation efforts, right? Aside from the fact that he returned to methamphetamine in 2022, the largest concern for me, Mr. Reynolds, is that even with the aid of probation, even with the aid of the court's order by magistrate Judge Koch to see the treatment, very quickly that changed, and you were not in compliance even as late as last month. And thus, I see no real need for not just public protection but deterrence. And so if we send this back, why isn't the judge just going to read that and say, well, for those same reasons, right, I don't think that not revoking and for the reasons, all the reasons I discussed last time, even if I thought I had the option, I wouldn't do it because treatment wasn't working. I guess that, isn't that the definition of harmless error? Your Honor, I think that the posture at that particular moment is different. That was his conduct on pre-revocation supervision. So I think it's different. He was struggling with addiction. It's certainly, there's no doubt, and that's probably characterized his entire time on supervision. However, I think that the harm suffered is that he still went to a period of prison as opposed to getting the treatment. So the district court is saying at a pre-revocation stage, you're struggling with addiction and then using that as a base to say that there's only one option here, and that is custody. I think that's different than saying that there's no other option once a case gets remanded. And for those reasons, I'd like to say we're running out of time for rebuttal. Very good. Thank you, Mr. Pennington. Mr. Temkin, we'll now move to you for argument on behalf of the government. May it please the Court. Good morning, Your Honors. Eli Temkin for the United States. This Court should affirm the district court's revocation judgment. The record in this case shows that the district court did not view revocation as mandatory, whether under 3583E3 or under 3583G and then 3583D, which builds in the potential treatment exception. The court exercised its discretion. It considered whether to order more treatment for Mr. Reynolds or whether to revoke a supervised release and order him incarcerated. The court held a substantial hearing, and the treatment versus incarceration question was front and center during that hearing. Everyone was on- So, Mr. Temkin, I think that there are two points in the record that I think point in the opposite direction that I would like you to address with regard to what the judge knew at the time. One is, as Mr. Pennington cites in his brief, is on page 17, where the judge says, revocation is mandatory. And of course, I've already done that because you possess a controlled substance. And second is on the bottom of page 27, when the judge asks, how do you propose I structure that? To me, the question of how do you propose I structure that is only necessary if the judge was trying to figure out, well, how do I get around this, the mandatory nature of this revocation? Yes, Your Honor. I'll talk about each of those points. First, on page 25 of the appendix, the first line that you mentioned, the district court- Well, back up a second. That's a single line in a 40-page transcript. It doesn't show that the district court was confused about its statutory options. That comment was made in the context of discussing the recommendation of the sentencing guidelines policy statement. The court was going through the recommendation from that policy statement. And under that policy statement, revocation is ostensibly mandatory. The policy statement uses the language shall revoke. But that's all couched in the advisory nature of the guidelines. And the district court repeatedly acknowledged that the guidelines policy statement was only advisory. For example, on page 24 of the appendix, and again in its explanation on pages 39-45 of the appendix. So the district court was accurately characterizing what the policy statement says, but that doesn't change the ultimate options under the statute. As to the second point Your Honor identified, the district court was hearing out what Mr. Reynolds' counsel was suggesting and was hearing what they were proposing. That shows the court was engaging with the possibility of ordering treatment. Mr. Reynolds had had numerous chances at treatment and he hadn't taken advantage of those. This case was in front of the district court after all of that had transpired. And the court was asking, if I do order treatment, how do you want to structure that? How are we going to make sure that this would work for Mr. Reynolds given his history? And it heard Mr. Reynolds' counsel say how he would structure it. The district court didn't say out of hand, no, I can't order treatment, end of conversation. If the court had been of that mindset, it wouldn't have held this 40-page hearing where treatment versus incarceration was really the only contested question. Everyone agreed that there were violations, Mr. Reynolds admitted those violations, and the court went through that part quickly and then moved on to the discretionary question of the outcome. Moving then to the harmlessness question. The record shows clearly the district court considered treatment and it gave its view on the merits of that question. This is not a case like Pierce where the court said it didn't want to revoke but it thought its hands were tied. In this case, the court went through those options and found they were not sufficient in this case. I'll just point the court to one or two specific points in the transcript, pages 43 to 44 of the appendix. Quote, if those alternatives to imprisonment won't work, they won't stick, then the unfortunate reality is then that imprisonment is the mechanism by which the court needs to secure deterrence and public protection and promote those goals. And then on 44, continued, I think the reality is there will have to be imprisonment to promote federal sentencing goals. The court considered treatment options and found they were not sufficient, given Mr. Reynolds' history. So, Mr. Tumm, can I make, I just want to be clear on something. When I read your brief, I wasn't sure, I understand your primary argument about the district court has understood its revocation authority and its flexibility here, but are you, you're arguing that, yeah, if we don't agree with you on that, that harmless error doctrine does apply here and any error here is harmless? Correct. If the district, well, disagree with the premise, obviously, but yes, if the district court was confused about whether it had discretion to put Mr. Reynolds on additional supervision, the error still would be harmless because the court made clear that, in its view, having looked at all this, having looked at Mr. Reynolds' history, treatment was not a sufficient option here. Yeah. And incarceration was required. The reason I'm asking you the question is because I, when I read your brief, I thought when I turn the page, I'm going to see a section that says any error was harmless. And I didn't see that section. And that's got, that got me thinking, is the United States of the view that harmless error doctrine just doesn't apply in this context? No, Your Honor, I, if that wasn't as clear as it should have been in the brief, then. Yeah, there's part, no, I mean, I, don't take it as a credit, there's, there's parts of your brief that very much sound, without using the words, that very much sound like you're saying any, any mistake here is harmless. I mean, I can point you to many pages that I think that, that's what they're arguing. For some reason, he's just stopping short of not using those words. Yes, Your Honor, I believe we did cite a case for the proposition that harmless error review does apply in the revocation context. The case we cited was United States v. Lohr, it's unpublished, but it's 712 Federal Appendix 569. It's a 2017 case from this court. And I believe we cited that on page 15 of our brief. Yeah, I think it, I don't know of any, I don't know of any legal prohibition on harmless error doctrine applying in this area. Yeah, exactly, Your Honor. And that's what this court said, again, unpublished, in Lohr, that the harmless error analysis does apply in, in the revocation context. So yeah, I would, I would point you to page 15 of our brief, unless there are further questions, this court should affirm the revocation judgment. Thank you, Mr. Temkin. Thank you. Mr. Pankton, we'll give you a minute now for rebuttal. Thank you. If the court does decide to apply a harmless error standard here, I would like to point the court to Judge Lee, your prior question, and maybe I didn't flush it out well, but whether, when the district court's engaging with an assessment of Mr. Reynolds' pre-revocation conduct and concluded that the conduct had not been admittedly very good, was that sufficient to avoid the application of saying that Mr. Reynolds suffered a harm? And I will, to clarify my previous example or previous answers, I think that he did still suffer a concrete harm. He did not do well previously in treatment, that's true, but this was a different kind of treatment that may have been available, and whether it would work or whether it wouldn't, we just don't know. He got sent to prison instead, ended up doing 21 months where he's still in custody now instead of having the opportunity to have that type of inpatient programming that was requested. So I think this case is like Pierce, where you can look at the record, this court can look at the record and not be convinced that the district court was aware of its discretion. For those reasons, we respectfully ask for remand. Thank you. Thank you, Mr. Pennington. Thank you, Mr. Temkin. The case will be taken to our advisement.